FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 26 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICK DIAZ, an infant by his guardian,
RODRIGO DIAZ,

                              Plaintiff,

          -against-

UNITED STATES OF AMERICA,

                              Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

11 CV 5870 (RJD)

DEARIE, District Judge.

Rodrigo Diaz brings this personal injury action on behalf of his minor son, Patrick Diaz, against the United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. ("the FTCA"). Plaintiff seeks to recover for injuries sustained when he was struck by a federal government vehicle operated by a government agent. At the time of the accident, plaintiff was crossing a street in Brooklyn, New York, outside of the marked crosswalk.

The case was tried to the Court without a jury on April 8, 2013. Based on the findings of fact which follow, we conclude that defendant is entitled to judgment.

## I. FINDINGS OF FACT

Kevin Meinsen ("Meinsen") is a retired veteran of the New York City Police Department ("NYPD"), where he worked for nearly 27 years. Bench Trial Transcript ("Tr.") at 34. On January 30, 2009, Meinsen was commuting between offices in Brooklyn and Queens as part of his work on a NYPD/FBI joint robbery task force. Tr. 35. At approximately 8:15 p.m., he departed the Brooklyn office on Mermaid Avenue and 23rd Street in a 2008 Ford Taurus sedan.[1] He made a left-hand turn onto Mermaid Avenue and proceeded towards 17th Street, where he planned to make another left-hand turn. Tr. 18-20.

---

[1] It is undisputed that at the time of the accident, Kevin Meinsen was a federal employee acting in the course of employment with the United States of America, and that the vehicle involved in the accident was maintained by the United States of America. ECF Docket # 15, Proposed Pretrial Order, December 6, 2012, at 7-8.

At the same time, Patrick Diaz ("plaintiff"), then 12-years old, and his brother, Alex, then 14-years old, left a family gathering with the intention of walking to a store on the corner of Mermaid Avenue and 17th Street. Tr. 4, 47, 70. It was dark outside, and plaintiff was wearing dark clothing, including a dark green shirt and dark-colored pants. Tr. 17, 43, 77-79. The boys walked south on the 17th Street sidewalk towards Mermaid Avenue, where they planned to cross to the east side of the road to get to the store on the northeast corner of 17th and Mermaid. Tr. 11.

## A. The Accident

17th Street is a three-lane road running north and south, with two southbound lanes separated by a double-yellow line from one northbound lane. Tr. 11. Mermaid Avenue is a two-lane street running west and east. Id. There are four marked pedestrian crosswalks at the intersection of Mermaid and 17th Street. Id.

Meinsen had a green light as he approached the intersection, so he did not make a full stop before taking the left-hand turn from Mermaid Avenue onto 17th Street.[2] Tr. 22, 37. He looked at the crosswalk before turning and did not see anybody. Tr. 24, 37-38. Plaintiff, on the other hand, admits that he did not check the pedestrian "walk" sign at the intersection before crossing.[3] Tr. 85. We find this admission credible in light of the fact that plaintiff never made it to the crosswalk.

Instead, the boys took a short cut. As they approached the intersection from the south, they noticed that the eastbound crosswalk was blocked—at least partially—by a white car stopped at the red light. Tr. 12, 24-25, 81. Rather than trying to navigate around the vehicle or

---

[2] In his deposition, Meinsen initially testified that he did not remember what color the traffic light was "when [he] first observed it." Tr. 22.

[3] Plaintiff's deposition testimony conflicts with his response on direct examination, where he stated that he did check the pedestrian walk sign, and that it said "walk." Tr. 73.

using the other available routes, they stepped into the road behind the stopped car and attempted to traverse three lanes of traffic outside of the marked crosswalk. Tr. 37, 51, 63-64. Plaintiff looked both ways before stepping into the road, but from that point on he looked straight ahead of him.[4] Tr. 83-84. When asked if he checked again for cars after he stepped into the street, plaintiff answered, "Probably from the side of my eye." Id.

After passing through the two southbound lanes, plaintiff crossed the double-yellow line into the northbound lane and was struck by the front left fender of Meinsen's vehicle as it turned from Mermaid Avenue. Tr. 20, 40. According to his brother, who was standing about three feet behind him, plaintiff "spun off" the side of the car and fell to the ground, landing "around the rear" of the vehicle, near the back wheel. Tr. 53, 56, 67, 75.

The accident happened so quickly that Meinsen did not see plaintiff before hitting him, and did not have an opportunity to hit the brakes until after impact.[5] Tr. 23, 32, 39-40, 43-44. Plaintiff and his brother saw the oncoming vehicle only "a split second before" impact. Tr. 53, 75, 87.

### B. Meinsen's Speed

Neither party testified with any certainty as to exactly how fast Meinsen was driving. Plaintiff's perspective was limited because he did not see the car until a "split second" before the accident. Tr. 75, 87. And although Meinsen could not estimate his speed, he insisted that he was driving below the 30 mile per hour speed limit. Tr. 44, 115. He described it as "a safe relative speed" and "under the speed limit" based on his familiarity and experience with the narrow

---

[4] When asked initially, plaintiff denied that he looked straight ahead the entire time, stating "I was looking at my surroundings. I wouldn't say that I was just looking straight." Tr. 84. He immediately contradicted himself and conceded that he was looking straight ahead as he proceeded through the intersection, stating "I was looking towards the direction I was walking." Tr. 85.

[5] On cross examination, plaintiff's counsel suggested that, according to a police report, Meinsen saw plaintiff running across the street. Tr. 32-33. In response, Meinsen clarified that he did not actually see plaintiff running, but assumed he had been running based on the instantaneous nature of the accident when plaintiff appeared from behind the car. We are not persuaded, on this evidence, that Meinsen actually saw plaintiff in time to avoid the accident.

3

layout of that particular turn. Tr. 40-41, 43-44 (". . . I had to [use] extra caution to make that turn because [of] the width of the roadway. . . It barely fits a car.").

Meinsen's belief that he was driving under the speed limit is corroborated by the testimony of Anthony Storace, an engineer and expert witness hired by the government. See Tr. 98-126.[6] Storace visited the scene of the accident, took measurements, and put together an accident reconstruction that factored in both the layout of the intersection and the facts alleged. Tr. 100, 111. Based on his analysis, he issued a report concluding that Meinsen could not have avoided the accident under the circumstances. Tr. 102.

Storace's findings were based on his calculation that Meinsen was driving approximately 10 miles per hour through the turn. Tr. 113-15. This estimate was based, in part, on Alex Diaz's testimony that Meinsen's car traveled approximately five feet after impact. Tr. 109, 114. From that information, Storace calculated the speed of the car at the point Meinsen began to brake. Tr. 114.

Plaintiff challenged the accuracy of this calculation, noting that it was based only on Alex Diaz's testimony. Tr. 109-10. He argued that if the calculations were done according to Meinsen's testimony that the vehicle moved about a car length—approximately 17 feet for a Ford Taurus sedan—Storace's estimated speed would have been 17 and 20 miles per hour.[7] Tr. 110. In either case, these estimates support Meinsen's belief that he was driving under the speed limit.

While the precise speed cannot be determined on this information, there is additional evidence relevant to this inquiry. Alex Diaz, who arguably had the clearest view of the accident, testified that plaintiff landed near the back wheel. Because plaintiff was not behind the full

---

[6] Plaintiff did not object to the testimony of Mr. Storace or file any motions in limine challenging his expert status.
[7] A 2008 Ford Taurus sedan is approximately 17 feet long. Tr. 110.

4

length of the 17-foot sedan, but near the wheel, a foot or more from the back of the vehicle, we find it likely that Meinsen's speed was less than 17 to 20 miles per hour.

### C. The Position of the Stopped Vehicle

The parties also dispute the location of the stopped white car. Plaintiff and his brother recalled that the vehicle was in the southbound lane of 17th Street, closest to the sidewalk. *See* Exs. C, D; Tr. 52, 55, 72-73, 75. In contrast, Meinsen remembers seeing the car in the southbound lane closest to the double-yellow line. Tr. 24. In light of the agreement as to the instantaneous nature of the collision, we find it more likely that Meinsen's perspective is accurate. Had the car been stopped in the far right lane, *both* parties would have had a significantly better field of vision and additional time to avoid the accident.

The parties also disagree about the extent to which the crosswalk was blocked. Meinsen testified that the white car was stopped "short of the crosswalk." Tr. 38. In contrast, both plaintiff and his brother testified that the crosswalk was partially blocked. Alex Diaz admitted that the car did not extend "all the way across the crosswalk," and that the rear of the car was south of the white line, which is at least 20 feet from the front of the crosswalk.[8] In light of the fact that Meinsen's vehicle was only 17 feet long, it is not possible that the rear of the car could be south of the white line while also fully obstructing the crosswalk. Furthermore, not only did plaintiff initially agree that the crosswalk was partially blocked, but he also admitted that, from his vantage point, it would have been impossible to see if the crosswalk was completely blocked. Tr. 88-89.

On these facts, we find no evidence that the crosswalk was completely obstructed by the stopped vehicle.

---

[8] Accordingly Storace, the white line is a "stop bar," and the distance from the stop bar to the front of the pedestrian crosswalk is 20 feet, or approximately 24 feet including the width of the line. Tr. 112-13. Based on this information, Alex Diaz's testimony supports the fact that the crosswalk could not have been completely obstructed.

## II. CONCLUSIONS OF LAW

### A. Legal Standard

Plaintiff brings this action under the FTCA, which permits claims against the United States for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The Government's liability for negligence is determined based on "the law of the place where the act or omissions occurred." Id. Under New York law, plaintiff must establish that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered damage as a proximate result of the breach. Wright v. United States, 2012 WL 3249694, at *4 (E.D.N.Y. 2012) (Garaufis, J.) (quoting Solomon v. City of N.Y., 66 N.Y.2d 1026, 1027 (1985)). Plaintiff bears the burden of proving these elements by a preponderance of the evidence. Kane v. United States, 189 F. Supp.2d 40, 52 (S.D.N.Y. 2002).

### B. Application

Applying this court's findings of fact to the legal standard, we cannot conclude that defendant was negligent. First, there is no evidence that Meinsen breached any duty to plaintiff. Plaintiff does not claim, nor is there any evidence suggesting that the timing or path of Meinsen's turn was illegal. Accordingly, the question of defendant's negligence becomes one of speed.

Neither plaintiff nor his brother could testify as to the speed of the vehicle, and plaintiff did not offer any witness testimony suggesting that Meinsen's speed was excessive. In fact, the only evidence in the record supports not only that Meinsen was driving below the speed limit, but that he was driving well below it.

In contrast, plaintiff's negligence in this case is clear. By jaywalking at night, wearing dark clothes, plaintiff invited disaster. While counsel argues that he should be held to the standard of a reasonably prudent 12-year-old, plaintiff admits that he knew crossing outside of the crosswalk was wrong. Tr. 81. Nevertheless, he traversed a three-lane road without making a concerted effort to check again for oncoming cars once he stepped off the sidewalk. He also made the unwise decision to step into oncoming traffic from behind a stopped car.

Plaintiff's attempt to justify his decision to jaywalk is similarly unavailing. There is no evidence that the crosswalk was fully obstructed. In fact, the weight of the evidence suggests that the crosswalk was, at best, only partially blocked. This accident would not have happened had plaintiff abided by the rules of the road, which are written to ensure his safety.

Despite counsel's best efforts to present the evidence in a forceful and favorable manner, the credible evidence does not support, by a preponderance of the evidence, plaintiff's allegation that Mr. Meinsen was negligent in the operation of his vehicle. Accordingly, we enter judgment in favor of defendant.

## III. CONCLUSION

To put it simply—accidents happen. Most can be avoided. Had plaintiff chosen the safer course and crossed at the crosswalk, and not mid-block behind a stopped automobile, the likelihood is that this near-tragic accident would not have happened. The Clerk of the Court is directed to enter judgment for the defendant consistent with this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
August 23, 2013

s/RJD

RAYMOND J. DEARIE
United States District Judge